# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

Kimberly Perkins,

    Plaintiff,

Court File Number:_____

v.

**VERIFIED COMPLAINT**

Metropolitan Council, Metro HRA,

    Defendant.

    Plaintiff Perkins, a low-income person, seeks declaratory and emergency injunctive relief enjoining defendant HRA from refusing to consider and grant her a reasonable accommodation under the Fair Housing Amendments Act reinstating her Section 8 rental assistance under the Section 8 Housing Choice Voucher program. Plaintiff also seeks declaratory and emergency injunctive relief enjoining defendant HRA from terminating her Section 8 rental assistance without showing by a preponderance of the evidence that plaintiff committed a "serious" violation of her lease.

    Plaintiff Perkins, as and for her claims for relief against defendant HRA, states as follows:

# PARTIES

1. Plaintiff is the mother of one minor child, a son, and is a resident of Ramsey County, State of Minnesota.  She is disabled, as is her son. She receives SSI disability benefits for herself and child support for her son.

2. Defendant HRA is a local government agency which administers a HUD Section 8 Housing Choice Voucher program in the Saint Paul-Minneapolis metropolitan area.   The HRA is located at 390 Robert Street North, Saint Paul, MN 55101.

## JURISDICTION

3. This Court has Jurisdiction over the federal question and violation of federal law alleged herein under 28 U.S.C. § 1331.

4. This Court has jurisdiction over plaintiff's fair housing claim under 42 U.S.C. § 3613 and 28 U.S.C. § 1331.

5. This Court has jurisdiction over plaintiff's civil rights claims under 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

6. A private right of action is authorized by 42 U.S.C. §§ 3613 and 1983.

7. The request for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

8. The request for injunctive relief is authorized by the Federal Rules of Civil Procedure, Rule 65.

9. Plaintiff's claims arise in the State of Minnesota, so venue lies in this District Court pursuant to 28 U.S.C. §1391.

## SECTION 8 HOUSING CHOICE VOUCHER PROGRAM

10. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 9.

11. The Housing Choice Voucher Program is a federal rental subsidy program administered by HUD.  In turn HUD funds and regulates state or local governmental units known as housing authorities to directly administer the program.

12. Defendant, Metro HRA, is one of the housing authorities responsible for administering the Housing Choice Voucher program in Ramsey County.

13. HUD pays rental subsidies so eligible low-income families can obtain decent, safe, and sanitary housing.

14. Families who are participants in the program rent privately owned units that meet basic housing quality standards.  The housing authority inspects a unit and approves the unit and tenancy.  It then enters into a housing assistance payment contract with the owner.  The housing authority makes rent subsidy payments on behalf of the family.

15. The rental subsidy is calculated based on a local payment standard which is the maximum subsidy the HRA will pay for a unit.  If the rent is less than the payment standard the family pays 30% of their adjusted income for rent.

If the rent is more than the payment standard the family may pay up to 40% of its income to equal the amount of rent exceeding the payment standard.

16. A housing authority is required to terminate a family's participation in the Housing Choice Voucher program if the family is evicted from housing assisted under the program for serious violation of the lease. 24 CFR § 982.552 (b) (2);

17. HUD regulations do not define the meaning of "serious" as used in 24 CFR § 982.552 (b) (2).

18. A housing authority is prohibited from refusing to make a reasonable accommodation in rules, policies, practices, or services when such accommodation may be necessary to afford a disabled or handicapped participant an equal opportunity to use and enjoy an assisted housing dwelling.  42 U.S.C. §3604(f)(3)(B); 24 CFR § 100.204.

19. HUD regulations do not require or authorize a housing authority to refuse to make a reasonable accommodation continuing the assistance of a Housing Choice Voucher participant who is evicted for holding over after her lease ends.

20. HUD regulations do not require or authorize a housing authority to refuse to make a reasonable accommodation continuing the assistance of a

Housing Choice Voucher participant who is evicted for committing a serious violation of the lease.

21. HUD regulations require a housing authority to exercise discretion to decide whether a participant's lease violation is serious or intentional in light of all the circumstances, including the participant's limited capacity to search for housing and to move.  24 C.F.R. §982.552(c)(2).

22. When a housing authority refuses a requested accommodation because it is not reasonable, it should discuss with the requester whether there is an alternative accommodation that would effectively address the requester's disability-related needs. *Joint Statement of the Department of Housing and Urban Development and Department of Justice[;] Reasonable Accommodations Under the Fair Housing Act.* May 17, 2004, at page 7; *Boston Housing Authority v. Bridgewaters* 452 Mass. 833, 842 (Mass. 2009).

23. It is incumbent upon the housing authority to request documentation or open a dialogue with the requester to discuss the disability-related accommodation.  *Jankowski Lee Associates v. Cisneros* 91 F.3d 891, 895 (7th Cir. 1996).

24. A failure to reach an agreement on an accommodation request is in effect a decision by the housing authority not to grant the requested

accommodation. *Joint Statement of the Department of Housing and Urban Development and Department of Justice[;] Reasonable Accommodations Under the Fair Housing Act.* May 17, 2004, at page 9.

## FACTS

25. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 24.

26. Plaintiff has a history of seizure disorder, depression, PTSD, anxiety, insomnia and dissociative disorder. She is under the care of a neurologist for her seizures and has an AHRMS worker who is helping her become more independent.

27. Plaintiff, as a single mother, is raising a seventeen-year-old son who was recently diagnosed with a generalized seizure disorder.

28. Plaintiff was first issued a Housing Choice Voucher by Defendant on May 1, 1991.

29. On or about December 1, 2012, using her Housing Choice Voucher, plaintiff began renting a rental unit at Garden Grove Apartments in New Brighton Minnesota.

30. On April 29, 2013 the management of Garden Grove Apartments notified plaintiff that her lease would not be renewed when it ended on November 30, 2013.

31. As documented by plaintiff's physician, because of her fragile psychiatric state and unrealistic hope that she would be able to stay in her apartment at Garden Grove Apartments combined with the onset of her son's seizure disorder, plaintiff was unable to take the steps necessary to obtain new housing or make future plans.

32. As a result of her disability and the disability of her son, plaintiff was unable to vacate her apartment on November 30, 2013 when her lease ended.

33. Plaintiff was incapable of moving and did not act willfully to hold over or refuse to vacate her rental unit.

34. Plaintiff's landlord did not suffer the loss of rent during the time plaintiff occupied her assisted unit after her lease expired. Plaintiff paid the full market rent during this time.

35. On December 2, 2013 Garden Grove, LLC filed an eviction complaint against plaintiff in the Ramsey County District Court because she failed to vacate her apartment as requested in the notice to vacate given to her by the management of Garden Grove Apartments on April 29, 2013.

36. On January 8, 2014 the Ramsey County District Court issued a decision and order determining that plaintiff held over improperly after the

expiration of her lease on November 30, 2013 and that Garden Grove Apartments was entitled to recovery of the rental property.

37. The court determined that Garden Grove Apartments was entitled to recovery of the rental property, but it did not determine whether plaintiff was being evicted for a serious violation of her lease.

38. On January 10, 2014 defendant sent a "Termination of Assistance" letter to plaintiff, notifying her that her assistance would be terminated effective February 28, 2014 because plaintiff had allegedly committed a serious violation of her lease.

39. In response to defendant's termination notice, plaintiff through her legal counsel, by letter dated January 13, 2014, requested defendant to make a reasonable accommodation allowing her to move with continuing assistance and reinstating her assistance.

40. The January 13th letter noted that an enclosed letter from plaintiff's physician documented that plaintiff was disabled and that her disabilities include a seizure disorder, depression, PTSD, insomnia, and dissociative disorder substantially limiting several of plaintiff's major life activities, including interpersonal relationships and her ability to search for housing.

41. The January 13th letter confirmed the direct nexus between plaintiff's disability and her inability to move at the end of her lease on November 30, 2013 as documented by plaintiff's physician.

42. The January 13th letter also referenced documentation from plaintiff's physician that it was his medical opinion that with assistance from a housing services worker, plaintiff should be able to develop an effective plan for future housing and that plaintiff would be receiving assistance from Project HOPE to search for housing and would be moving out of an environment that resulted in a worsening of her symptoms.

43. The January 13th letter encouraged defendant to open a dialogue with plaintiff if it had any concerns about plaintiff's disability or its relation to her reasonable accommodation request.

44. The January 13th letter also included a request that defendant provide plaintiff with a pre-termination informal hearing.

45. By letter dated January 16, 2014, defendant through its legal counsel refused to make a reasonable accommodation, stating that the accommodation requested by plaintiff was not "possible to implement" because the federal regulations do not permit it, making it "unreasonable."

46. Defendant did not respond to plaintiff's invitation to open a dialogue if it had any concerns about plaintiff's disability or its relation to her reasonable accommodation request.

47. The letter of January 16th from defendant's legal counsel did not claim or assert that plaintiff did not have a disability that substantially limited major life activities.

48. The letter of January 16th from defendant's legal counsel did not claim or assert that there was not a direct nexus between plaintiff's disability and her inability to move at the end of her lease on November 30, 2013.

49. The letter of January 16th from defendant's legal counsel did not claim or assert that plaintiff would not be able to develop an effective plan for searching for future housing.

50. The letter of January 16th from defendant's legal counsel did not claim or assert that plaintiff's requested accommodation was not necessary to afford her an equal opportunity to enjoy her Section 8 assisted housing.

51. The letter of January 16th from defendant's legal counsel did not claim or assert that plaintiff's requested accommodation would pose an undue financial and administrative burden on defendant or result in a fundamental alteration of its Section 8 program.

52. In refusing to consider plaintiff's request for a reasonable accommodation, defendant did not reference any communication or directive from HUD that excused it from considering, or required it to reject, a request for a reasonable accommodation allowing a Housing Choice Voucher participant to continue receiving rental assistance when the participant is evicted for holding over after her lease ends.

53. Nor did defendant reference any HUD policy or communication from HUD indicating that HUD was likely to impose a sanction on a housing authority for granting a reasonable accommodation allowing a participant to continue receiving rental assistance after the participant was evicted for holding over after her lease ends.

54. In response to defendant's January 16th letter denying plaintiff's reasonable accommodation request, plaintiff through her legal counsel wrote defendant's counsel a letter on February 3, 2014.

55. In the February 3rd letter, plaintiff's counsel noted the reasons why plaintiff did not willfully remain in her unit and did not commit a serious lease violation.

56. The February 3rd letter asked defendant's counsel to forward plaintiff's request to HUD if it remained uncertain if it could grant plaintiff's request.

57. In response to plaintiff's request for an informal hearing, defendant did schedule an informal hearing for February 11, 2014.

58. An informal hearing was held on February 11, 2014.

59. By letter of February 18, 2014 plaintiff's legal counsel requested HUD to determine whether a housing authority is required under the Fair Housing Amendments Act, 42 U.S.C. §3604(F)(3)(b) to consider a voucher participant's request for a reasonable accommodation when it takes action to terminate the participant's voucher on the ground that the participant has committed a serious violation of her lease and it has discretion to decide whether the lease violation is serious or intentional in light of all the circumstances, including the participant's limited capacity to search for housing.

60. On February 25, 2014 defendant's hearing officer issued a decision upholding defendant's decision to terminate plaintiff's Section 8 rental assistance.

61. Defendant's hearing officer adopted defendant's position that any eviction for holding over after a lease ends is an eviction for a serious lease violation.

62. To date HUD has not responded to plaintiff's request.

63. As a result of losing her rental assistance plaintiff has become homeless and is suffering, and will continue to suffer, irreparable injury if the appropriate relief is not granted.

64. Since losing her rental assistance plaintiff has been unable to find affordable housing for herself and her son. Plaintiff and her son exceeded their allotted time at a homeless shelter.

65. Plaintiff's church is helping her cover the cost of a hotel but it is located in a separate city and several miles from plaintiff's son's school and their doctors.

66. Plaintiff does not have access to a refrigerator at the hotel room. Plaintiff is spending a large portion of her monthly income on take-out food for herself and her son.

67. Since defendant terminated plaintiff's voucher, plaintiff has been forced to board her and her son's two cats that help them cope with their disabilities. Plaintiff is paying a monthly boarding fee. The cats are at plaintiff's veterinarian, several miles from the hotel.

68. Neither plaintiff nor her son is able to work because of their disabilities.

69. Plaintiff and her son must visit their doctors regularly. The doctors are located several miles from the hotel.

70. Since defendant terminated plaintiff's voucher, plaintiff has been forced to pay a large portion of her income toward transportation to and from the hotel and doctors and the veterinarian.

71. Plaintiff's Generalized Seizure Disorder has worsened; she has had multiple seizures.

72. Plaintiff has a back condition that causes great pain and is managed with pain medication. Since defendant terminated plaintiff's voucher, plaintiff has been diagnosed with an ulcer. Plaintiff is no longer able to take pain medication because the medication would worsen her ulcer.

73. Plaintiff has been evaluated for adult protection case management services.

74. Plaintiff's son's Generalized Seizure Disorder has also worsened; he has suffered multiple seizures.

75. Plaintiff's son has been unable to cope with the stress of homelessness and the loss of his cats; he overdosed on substances on February 6, 2014. He was hospitalized and prescribed anti-anxiety medication.

### FIRST CAUSE OF ACTION – Fair Housing Amendments Act

76. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 75.

77. Plaintiff's rights have been violated under the Fair Housing Amendments Act, 42 U.S.C. § 3604(f), which prohibits discrimination on the basis of disability in housing.

78. Under the Fair Housing Amendments Act plaintiff and her son are entitled to protection as disabled persons, including the right to a reasonable accommodation because they have impairments that substantially limit a major life activity.

79. Under the Fair Housing Amendments Act plaintiff is entitled to a reasonable accommodation that affords her an equal opportunity to use and enjoy Section 8 assisted housing.

80. Defendant refused to make a reasonable accommodation in response to plaintiff's request for such an accommodation in violation of the Fair Housing Amendments Act.

81. As a result of defendant's violation of plaintiff's rights under these provisions, plaintiff has suffered and will continue to suffer irreparable injury if appropriate relief is not granted.

## SECOND CAUSE OF ACTION – Due Process

82. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 81.

83. Under the 14th Amendment of the United States Constitution and 24 C.F.R. §982.555(c)(6) a housing authority must show by a preponderance of the evidence that the participant has committed the family obligation which the housing authority asserts is the basis for the termination of the participant's rental assistance.

84. Defendant has failed to show by a preponderance of the evidence that plaintiff was evicted for a "serious" violation of her lease in violation of 24 C.F.R. §982.552(b)(2).

85. Defendant's termination of plaintiff's rental assistance without showing by a preponderance of the evidence that plaintiff was evicted for a "serious" violation of her lease violated plaintiff's due process rights.

86. Plaintiff is authorized to seek redress for the violation of her due process rights under 42 U.S.C. §1983.

87. As a result of defendant's violation of plaintiff's due process rights, as set out above, plaintiff will suffer irreparable injury if appropriate relief is not granted.

### REQUEST FOR RELIEF

WHEREFORE, plaintiff Kimberly Perkins requests relief as follows:

A. That the Court assume jurisdiction over this cause of action;

B. That the Court issue emergency relief and a permanent injunction

enjoining defendant from 1) refusing to consider and make a reasonable accommodation reinstating plaintiff's Section 8 Housing Choice Voucher rental assistance and 2) terminating plaintiff's rental assistance without showing by a preponderance of the evidence that plaintiff was evicted for a "serious" violation of her lease;

C. That the Court declare that defendant violated plaintiff's rights under the Fair Housing Amendments Act, 42 U.S.C. § 3604(f) and under 24 C.F.R. §982.555(c) and the due process clause of the United States Constitution;

D. That plaintiff be awarded compensatory damages;

E. That plaintiff be awarded reasonable attorney fees; and

F. That the Court award such other relief as appears appropriate and just under the circumstances.

Dated: 4/30/14                    SOUTHERN MINNESOTA REGIONAL
                                          LEGAL SERVICES


                                  By:   s/Heather Meyers
                                        Heather Meyers (Atty Reg. #0390061)
                                        55 E. 5th Street, Suite 400
                                        Saint Paul, MN 55101
                                        (651) 894-6919
                                        FAX (651) 297-6457
                                        Heather.meyers@smrls.org

    Michael Hagedorn Atty Reg. #0039287
    450 N. Syndicate St., Suite 285
    Saint Paul, MN 55101
    (651) 894-6903
    FAX (651) 645-0757
    Mike.hagedorn@smrls.org

## VERIFICATION

STATE OF MINNESOTA )
                                   ) ss.
COUNTY OF Ramsey )

Kimberly Perkins, being first duly sworn upon oath, deposes and states stat she is the plaintiff in the above action, and that she has read the foregoing complaint and knows the contents thereof and that the same is true to her knowledge, except as to those matters therein stated on information and belief, and as to those matters she believes them to be true.

                                                          s/Kimberly Perkins
                                                          Kimberly Perkins

Sworn to and subscribed before me this

30 day of  April, 2014

s/Ann Sullivan
Notary Public