UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 14-1355(DSD/JJG)

Kimberly Perkins,

          Plaintiff,

v.                                                **ORDER**

Metropolitan Council,
Metro HRA,

          Defendant.


     Heather Meyers, Esq., Michael W. Hagedorn, Esq. and
     Southern Minnesota Regional Legal Services, 55 East Fifth
     Street, Suite 400, St. Paul, MN 55101, counsel for
     plaintiff.

     Mary G. Dobbins, Esq. and Landrum Dobbins LLC, 7400 Metro
     Boulevard, Suite 100, Edina, MN 55439, counsel for
     defendant.



     This matter is before the court upon the motion for
preliminary injunction by plaintiff Kimberly Perkins.  Based on a
review of the file, record and proceedings herein, and for the
following reasons, the court denies the motion.



                            **BACKGROUND**

     This housing dispute arises out of the cessation of Perkins's
Section 8 Housing Choice Voucher assistance by defendant
Metropolitan Council, Metro HRA (Metro HRA).  Perkins has a history

of depression, PTSD, anxiety, insomnia, dissociative disorder and a seizure disorder.  Ver. Compl. ¶ 26.  Perkins's son has also been diagnosed with a seizure disorder.  Id. ¶ 27.

Perkins has been issued Section 8 housing vouchers since 1991. Id. ¶ 28.  On December 1, 2012, Perkins began renting an apartment at Garden Grove Apartments (Garden Grove) in New Brighton, Minnesota.  Id. ¶ 29.  On April 29, 2013, Garden Grove informed Perkins that her lease would not be renewed when it expired on November 30, 2013.  Id. ¶ 30.  Perkins and her son did not vacate the unit on November 30, 2013.  Id. ¶ 32.  Perkins alleges that she did not vacate the unit because she was incapable of moving due to her disability and that of her son.  Id. ¶¶ 32-33.

On December 2, 2013, Garden Grove commenced an eviction action against Perkins in Ramsey County District Court.  Id. ¶ 35.  On January 8, 2014, the Ramsey County District Court held that Perkins improperly held over after the expiration of her lease and ordered that Garden Grove was entitled to recover the rental property.  Id. ¶ 36.  Perkins was removed from the unit on January 17, 2014, by the Ramsey County Sheriff.  Meyers Aff. Ex. 1, at ¶ 26.

On January 10, 2014, Metro HRA sent a "Termination of Assistance" letter to Perkins, informing her that her assistance would be terminated on February 28, 2014, because she had committed a serious violation of her lease.  Ver. Compl. ¶ 38.  On January 13, 2014, Perkins requested (1) a pre-termination informal hearing

and (2) that Metro HRA provide Perkins with a reasonable accommodation by reinstating her Section 8 assistance to allow her to move to a new apartment. Id. ¶¶ 39, 44. As part of the request, Perkins submitted a letter from her physician stating that Perkins was disabled and that her disability contributed to her inability to search for housing and to timely vacate the Garden Grove apartment. Id. ¶¶ 40-41.

On January 16, 2014, Metro HRA denied Perkins's request to reinstate benefits, stating that the proposed accommodation was not reasonable. Id. ¶ 45. Metro HRA scheduled and held an informal hearing on February 11, 2014. Id. ¶¶ 57-58. On February 25, 2014, the hearing officer upheld the termination of Section 8 assistance, holding that Perkins had committed a serious violation of her lease. Id. ¶ 60.

On April 30, 2014, Perkins filed suit, alleging (1) a violation of the Fair Housing Amendments Act (FHAA) and (2) due process violations under 42 U.S.C. § 1983. On May 20, 2014, Perkins moved for a preliminary injunction. The court heard oral argument on May 22, 2014, and all parties appeared through counsel.

## DISCUSSION

A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The court

considers four factors in determining whether a preliminary injunction should issue: (1) the likelihood of the movant's ultimate success on the merits, (2) the threat of irreparable harm to the movant in the absence of relief, (3) the balance between the harm alleged and the harm that the relief may cause the non-moving party and (4) the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). The movant bears the burden of proof concerning each factor. See Gelco v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987). No single factor is determinative. See Dataphase, 640 F.2d at 112-14. Instead, the court considers the particular circumstances of each case, remembering that the primary question is whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Id. at 113.

## I.  Likelihood of Success on the Merits

The court first considers the "most significant" Dataphase factor: likelihood that the movant will prevail on the merits. S&M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992). Perkins argues that she can establish a likelihood of success on both her FHAA claim and her § 1983 due process claim.

### A.  FHAA

Perkins argues that Metro HRA discriminated against her by declining to grant her proposed accommodation. On January 13,

2014, Perkins requested that Metro HRA accommodate her (1) by excusing the eviction for holding over and (2) by reinstating her Section 8 benefits.    Under the FHAA, unlawful disability discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."    42 U.S.C. § 3604(f)(3)(B).    To establish a prima facie case of failure to accommodate, a plaintiff must show "that her requested accommodation is (1) linked to her disability-related needs, (2) necessary to afford her an equal opportunity to enjoy Section 8 benefits and (3) possible to implement."  Huberty v. Washington Cnty. Housing & Redevelopment Auth., 374 F. Supp. 2d 768, 773 (D. Minn. 2005) (citations omitted).    "If plaintiff makes such a showing, the burden shifts to [the housing authority] to demonstrate that the requested accommodation is unreasonable."  Id. (citation omitted).

Here, even if Perkins could establish a prima facie failure-to-accommodate claim, Metro HRA would have the opportunity to show that the requested accommodation was not reasonable.  "In the FHAA context, a requested accommodation is unreasonable when it fundamentally alters the nature of the program or imposes undue financial or administrative burdens."   Id. at 774 (citations omitted).    "Whether the accommodation is unreasonable is highly

fact-specific, requiring a case-by-case determination."   Id.
(citations omitted).

At this stage in the proceedings, Metro HRA could likely
demonstrate that the proposed accommodation was not reasonable.
Specifically, Metro HRA argues that it was obligated under
applicable Department of Housing and Urban Development (HUD)
regulations to terminate the Section 8 benefits after Perkins was
evicted for holding over.   Indeed, HUD regulations provide that
Metro HRA "*must* terminate program assistance for a family evicted
from housing assisted under the program for serious violation of
the lease."   24 C.F.R. § 982.552(b)(2) (emphasis added).   Such
termination is mandatory upon a finding that an individual was
evicted for a serious violation of the lease. See Cole v. Metro.
Council HRA, 686 N.W.2d 334, 338 (Minn. Ct. App. 2004).

A "serious" violation is not defined within the regulations.
Nevertheless, courts have found that holding over at the expiration
of a lease is a serious violation of the lease.   See Wilhite v.
Scott Cnty. Hous. & Redevelopment Auth., 759 N.W.2d 252, 256 (Minn.
Ct. App. 2009) ("In the case of serious violations [such as holding
over], the landlord is deprived of either a tangible property
interest or a real, significant, economic benefit.").   As a result,

6

Perkins's eviction was for a serious lease violation,[1] and Metro HRA was required by HUD regulations to terminate assistance.

Given Metro HRA's requirement to comply with HUD regulations, the court concludes that excusing Perkins's eviction for the serious lease violation and reinstating Section 8 benefits would likely not have been a reasonable accommodation for Perkins's disabilities. <u>Cf.</u> <u>Hover v. Fla. Power & Light Co.</u>, No. 93-14236, 1995 WL 91531, at *4 (S.D. Fla. Feb. 6, 1995) ("This Court cannot imagine any Court finding that an employer is required to intentionally violate a Federal Regulation and/or Statute to make a reasonable accommodation to an employee ...."). Moreover, the contract between HUD and Metro HRA provided that Metro HRA "shall use the Annual Contribution [from HUD] solely for the purpose of providing Decent, Safe, and Sanitary dwellings for Families in compliance with all applicable provisions of the Act and *all regulations issued pursuant thereto*." Smith Aff. Ex. A, at ¶ 2.2 (emphasis added). Requiring Metro HRA to jeopardize its HUD funding by intentionally violating an applicable regulation cannot

---

[1] Perkins attempts to distinguish <u>Wilhite</u>, arguing that, unlike the plaintiff in <u>Wilhite</u>, she paid rent for the holdover month. The <u>Wilhite</u> court, however, distinguished serious violations from minor violations such as "late payment of rent, improperly boarding a pet, or ignoring homeowner-association rules." 759 N.W.2d at 256. Holding over - whether accompanied by payment or not - is a much more serious violation than that class of minor violations. Moreover, Garden Grove expended time and money to evict Perkins after her lease expired, and such expense is a "real, significant, economic benefit." <u>Id.</u> As a result, Perkins's argument is unavailing.

constitute a reasonable accommodation.  See Huberty, 374 F. Supp. at 774 (noting that accommodation is not reasonable if it imposes financial or administrative burdens).  As a result, Perkins cannot demonstrate a likelihood of success on the merits of her FHAA failure-to-accommodate claim.

**B.    Section 1983**

Perkins also alleges a § 1983 claim for alleged due process violations.  Specifically, Perkins alleges that she has a property interest in her Section 8 benefits, and that Metro HRA terminated her benefits in violation of the FHAA.  As already explained, however, Perkins has not demonstrated a likelihood of success on her claim that Metro HRA violated the FHAA.  Likewise, Perkins cannot demonstrate a likelihood of success on the merits of the derivative § 1983 claim.  As a result, Perkins has not demonstrated a likelihood of success on the merits of either claim, and this Dataphase factor weighs against injunctive relief.

**II.  Irreparable Harm**

To establish irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief."  Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996) (per curiam) (citations omitted).  "Irreparable harm occurs when a party has no adequate

remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009).

The court concludes that Perkins did not demonstrate a substantial likelihood of success on the merits, indicating that irreparable harm is unlikely. At this stage in the proceedings, however, the record is not developed and "a decision on the merits" has not been rendered. Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 603 (8th Cir. 1999) (citations omitted). As a result, the court examines the potential harm alleged by Perkins.

Perkins argues that the denial of Section 8 assistance constitutes irreparable harm. Specifically, Perkins argues that, because of the cessation of benefits, she is now homeless and has been unable to secure affordable housing. See Ver. Compl. ¶¶ 63-65. Such injury is sufficient to demonstrate irreparable harm in the absence of a preliminary injunction. See Jackson v. Jacobs, 971 F. Supp. 560, 565 (N.D. Ga. 1997) ("[L]oss of subsidized housing constitutes irreparable injury justifying injunctive relief." (citation and internal quotation marks omitted)). Therefore, this Dataphase factor weighs in favor of injunctive relief.

## III. Balance of Harms

Under this factor, "a court should flexibly weigh the case's particular circumstances to determine whether ... justice requires the court to intervene to preserve the status quo." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998) (citation and internal quotation marks omitted). As already explained, Perkins has demonstrated the possibility of irreparable harm. That harm is balanced, however, by Metro HRA's interests in the uniform application of its rules and its need to comply with HUD regulations. Therefore, the balance of harms does not strongly favor either party, and this Dataphase factor is neutral.

## IV. Public Interest

Finally, Perkins argues that the public interest weighs in favor of reinstating her Section 8 benefits. Specifically, Perkins argues that the public has a strong interest in preventing homelessness and providing housing for individuals with disabilities. See Jackson, 971 F. Supp. at 565. As already explained, however, Perkins has not demonstrated a substantial likelihood of success on the merits. Moreover, Metro HRA argues that the public interest weighs in favor of denying relief, as Section 8 is not an entitlement program and there are hundreds of families on the waiting list for Section 8 assistance. Given these competing interests, the court determines that this Dataphase factor weighs slightly in favor of injunctive relief. Therefore,

10

based upon a balancing of the <u>Dataphase</u> factors, the court determines that a preliminary injunction is not warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for preliminary injunction [ECF No. 10] is denied. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  May 23, 2014

s/David S. Doty
David S. Doty, Judge
United States District Court
